**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ABELARDO VELA, JR.,

    Petitioner,

    v.

MIKE KNOWLES, Warden,

    Respondent.
_____/

No. C 05-1465 PJH

**ORDER DENYING HABEAS PETITION**

Before the court is the petition for writ of habeas corpus filed by state prisoner, Abelardo Vela, Jr. ("Vela"), pursuant to 28 U.S.C. § 2254. On April 13, 2005, this court ordered the state to show cause why the writ should not be granted. The state filed an answer, and Vela responded with a traverse. Having reviewed the parties' papers, the record, and having carefully considered their arguments and the relevant legal authorities, the court DENIES the petition.

**BACKGROUND**

**A.   Procedural History**

On November 8, 1999, Vela pled guilty to a felony charge of possession of a firearm by a person convicted of a prior violent offense, pursuant to California Penal Code § 12021.1, subd. (a). Vela was also charged with sentencing enhancements under California Penal Code §§ 667.5 and 1170.2 for two prior burglary convictions and a robbery. On March 13, 2000, the Santa Clara Superior Court rejected Vela's Romero motion to dismiss the priors, and sentenced Vela to twenty-five years to life in prison.

On September 19, 2001, Vela filed a state habeas petition, and the California Court

of Appeal remanded the case to the state superior court on April 23, 2002, for further proceedings concerning Vela's ineffective assistance of counsel claim. Following several evidentiary hearings, the state superior court denied Vela's habeas petition on May 15, 2003. Vela filed a second habeas petition with the state appellate court on December 1, 2003, contesting the superior court's decision. The court summarily denied the petition on March 4, 2004. The California Supreme Court denied review on May 12, 2004. Vela filed this petition for federal habeas relief on April 11, 2005.

**B.    Factual History**

On the evening of May 28, 1999, Vela was driving his vehicle with two passengers, Vince Contreras ("Contreras") and Debbie Valdez ("Valdez"). At approximately 5:00 p.m., two San Jose Police Department Officers ("SJPD"), Jincy Pace and Delia Bravo-Carney, pulled over Vela's car for a traffic violation.

When the officers learned from dispatch that Vela, Contreras, and Valdez were all on parole, they called for backup. Officer Pace then conducted a "parole search" of Vela's car and discovered a cooler containing beer.

Officer Pace testified that police dispatch reported that Vela had a suspended driver's license, although subsequent evidence suggests that Vela's license was actually valid at the time of the stop. See Exh. 12.[1] An unidentified SJPD officer then called Jeff Stover ("Stover"), Vela's parole officer, to report that Vela had been stopped while driving with a suspended license. Stover authorized a parole hold on Vela for driving without a valid license.

After searching the vehicle, police handcuffed both Vela and Contreras, and searched their mutual home.[2] Police later called Stover to inform him that during the

---

[1] The court GRANTS Vela's request to expand the record pursuant to Habeas Rule 7, and has considered the additional evidence submitted by Vela.

[2] As a condition of his parole, Vela had agreed that he and his residence and any property under his control could be searched without a warrant by any agent of law enforcement or the Department of Corrections at any time.

2

search of Vela's residence, they had located a handgun.

## ISSUE

Vela claims that he was denied effective assistance of counsel, arguing that as a result of defense counsel's inadequate investigation and insufficient familiarity with the underlying facts and law of his case, counsel ineffectively failed to file a motion to suppress the evidence retrieved from the search of Vela's vehicle and home, and the fruits of those searches.

## STANDARD OF REVIEW

The petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), so the provisions of that act apply. See Lindh v. Murphy, 521 U.S. 320, 327 (1997). Under the AEDPA, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court authority, falling within the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-413 (2000). "Clearly established Federal law" under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). This "clearly established" law refers to the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-court decision. Id. at 72.

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court

may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Id. at 75. However, this standard requires the state court decision to be more than incorrect or erroneous. Id. For the federal court to grant habeas relief, the state court's application of the Supreme Court authority must be objectively unreasonable. Id. The "objectively unreasonable" standard is different from the "clear error" standard in that "the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness" Id.; see Clark v. Murphy, 331 F.3d 1062, 1068 (9th Cir. 2003). Therefore, it is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous. Rather, the habeas court must conclude that the state court's application of federal law was objectively unreasonable. Andrade, 538 U.S. at 76; Clark, 331 F.3d at 1068.

However, when the state court decision does not articulate the rationale for its determination or does not analyze the claim under federal constitutional law, a review of that court's application of clearly established federal law is not possible. See Delgado v. Lewis, 223 F.3d 976, 981-81 (9th Cir. 2000); see also 2 J. Liebman & R. Hertz, Federal Habeas Corpus Practice and Procedure § 32.2, at 1424-1426 & nn. 7-10 (4th ed. 2001). When confronted with such a decision, a federal court must conduct an independent review of the record and the relevant federal law to determine whether the state court's decision was "contrary to, or involved an unreasonable application of," clearly established federal law. Delgado, 223 F.3d at 982.

> When a state court does not furnish a basis for its reasoning, we have no basis other than the record for knowing whether the state court correctly identified the governing legal principle or was extending the principle into a new context... [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the 'objectively reasonable' lens ground by Williams [v. Taylor, 529 U.S. 362 (2000)]... Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.... Only by that examination may we determine whether the state court's decision was objectively reasonable.

Id.

4

With respect to state court findings of fact, under § 2254(d)(2), a federal court may not grant a habeas petition by a state prisoner unless the adjudication of a claim on the merits by a state court resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §2254(d)(2). The "clearly erroneous" standard of unreasonableness that applies in determining the "unreasonable application" of federal law under § 2254(d)(1) also applies in determining the "unreasonable determination of facts in light of the evidence" under § 2254(d)(2). See Torres v. Prunty, 223 F.3d 1103, 1107-1108 (9th Cir. 2000). To grant relief under § 2254(d)(2), a federal court must be "left with a firm conviction that the determination made by the state court was wrong and that the one [petitioner] urges was correct." Id. at 1108.

## DISCUSSION

**I.    Cognizability of Vela's Claims**

   **A.    Fourth Amendment Claims**

The United States Supreme Court's decision in Stone v. Powell bars federal habeas review of Fourth Amendment claims unless the state did not provide an opportunity for full and fair litigation of those claims. 428 U.S. 465, 481-82, 494 (1976). However, Sixth Amendment claims based on incompetent representation by counsel are not barred by Stone v. Powell. See Kimmelman v. Morrison, 477 U.S. 365, 373-83 (1986). Accordingly, Vela's Fourth Amendment issues raised in the context of his Sixth Amendment ineffective assistance of counsel claim are cognizable in this proceeding.

   **B.    Pre-Guilty Plea Defects**

A petitioner who has pleaded guilty may only contend that his guilty plea was not voluntary and intelligent, see Hill v. Lockhart, 474 U.S. 52, 56 (1985), or that the advice he received from his counsel was ineffective in violation of the Sixth Amendment. See Tollett v. Henderson, 411 U.S. 258, 267 (1973); Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994). To the extent that petitioner challenges his counsel's advice or representation, he

1  may only present claims relating to the plea advice. See Moran, 57 F.3d at 700.

2  Here, none of Vela's contentions regarding ineffective assistance of counsel implicate the voluntary or intelligent nature of his plea, nor do they question his counsel's advice regarding the plea. Although Vela asserts that "the relationship between the constitutional violations and the taking of the plea are . . . straightforward," his explanation regarding the relationship falls far short of establishing the connection. For these reasons, the court need not consider Vela's ineffective assistance of counsel claim.

However, for the reasons set forth below, even assuming that Vela's ineffective assistance of counsel claim was properly raised, Vela has not established that he is entitled to habeas relief on the claim.

## II.  Vela was not Denied Effective Assistance of Counsel

The Sixth Amendment right to counsel guarantees not only assistance, but effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686 (1984). The benchmark for determining any claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. See id. The inquiry regarding whether counsel was effective is a mixed question of law and fact. Id. at 698.

A successful claim of ineffective assistance of counsel has two components. First, petitioner must show that counsel's performance was deficient. Id. at 687. Deficient performance is "representation that falls below the objective standard of reasonableness." See id. at 688. Accordingly, the relevant inquiry is not what defense counsel could have done, but whether the choices defense counsel made were reasonable. See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

Second, having established deficient performance, petitioner must show that counsel's errors were serious enough to deprive the defendant of a fair, reliable trial. Strickland, 466 U.S. at 687-88. The test for prejudice is not purely outcome determinative - the petitioner need not show that the deficient conduct more than likely altered the outcome

of the case. Id.  Instead, petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.  In other words, judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689.

### A.    Deficient Performance

Trial counsel has wide discretion in making tactical decisions, including forgoing inconsistent or unsupported defenses. See, e.g., Correll v. Stewart, 137 F.3d 1404, 1411-12 (9th Cir. 1998).  In addition, trial counsel need not file a motion that he knows to be meritless on the facts and the law.  See Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).

Here, to determine whether Vela's counsel's decision was reasonable, the court must examine the strength of a motion to suppress on the bases alleged by Vela. See Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999).  In keeping with the Ninth Circuit approach, the court first addresses the prejudice issue.  See id.

### B.    Prejudice

Under Strickland, to show prejudice resulting from failure to file a motion, Vela must demonstrate that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to Vela. Wilson, 185 F.3d at 990. A successful showing of prejudice requires "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 46 U.S. at 687.

Vela argues that a motion to suppress would have been successful because the suspicionless search of his vehicle was unconstitutional.

On habeas review, the superior court for Santa Clara county held that Vela's traffic

7

stop was proper. Exh. 7. The court found that the stop was not "arbitrary, capricious, nor harassing." Id. The court also concluded that: "This appears to have been a lawful stop and subsequent search of a parolee." Id.

Because there is no detailed order from the state court, it is helpful to set forth the relevant facts. The following facts concerning the searches of Vela's vehicle and residence are based upon this court's review of the January 16 and 21, and February 11 and 20, 2003 transcripts of the evidentiary hearings before the superior court.

On May 28, 1999, Vela was driving his vehicle in San Jose. Transcript of Evidentiary Hearing of January 16 & 21, 2003, and February 11 & 20, 2003 ("TEH") 14:14-18. Contreras sat next to him in the front passenger seat, and Valdez sat in the back of the 1966 Chevy Chevelle. TEH 15:7-9, 58:13-17. Vela and Valdez had just visited their parole officers. TEH 56:6-10, TEH 117:21. Approximately five to fifteen minutes after leaving the parole office, Officers Pace and Bravo-Carney pulled over Vela's car. TEH 56:17-22, 63:15.

The officers had been sitting in their police car in a Burger King parking lot when Vela's vehicle passed by. Officer Pace testified that she noticed a high school tassel hanging from the rearview mirror and pulled Vela over because it constituted an unlawful obstruction of the driver's vision. TEH 15:18-27, 20:8-12.

During the traffic stop, Officer Pace asked all of the vehicle's occupants for identification, and ran their information through the dispatcher. TEH 48:5-12. The dispatcher subsequently reported that all three occupants were either on parole or probation. TEH 48:13-16. Officer Pace testified that the dispatcher also reported that Vela's license was suspended. TEH 28:19-24. However, on a later date it became apparent that Vela's license was not suspended at the time of the vehicle stop. See TEH 30:5-10.

Officer Pace then conducted a search of the vehicle. TEH 32:19-21. She testified that the basis for searching Vela's car was "because he was on parole," and not because of

the supposed invalid driver's license. TEH 33:4-8. Officer Pace testified that at that point in her career, it was her policy to search all vehicles containing parolees or probationers that had been stopped. TEH 34:3-10. Officer Bravo-Carney testified that she trained new officers to search vehicles during traffic stops whenever the driver was on parole and had a parole condition permitting searches. TEH 81:24-82:9. She testified that she believed that a parole condition was sufficient "cause" to permit a vehicle search without more. TEH 82:7-9.

During the vehicle search, Officer Pace discovered a cooler on the floor in front of the front passenger seat, where Contreras had been seated. TEH 66:6. All witnesses agreed that there were five unopened beer cans in the cooler; however, there was conflicting evidence before the state superior court regarding whether there was also a sixth opened can and spilled beer in the cooler.[3]

Stover, Vela's probation officer, testified that about 10 to 15 minutes after Vela left his office, he received a phone call from a police officer, informing him that Vela had been stopped and was driving without a valid license. TEH 118:13-22. Based on this information, Stover instructed the officer to place Vela on a parole hold. TEH 125:17-18. Stover stated that if he had known that there was beer in Vela's car, he would "probably not have let him go" home. TEH 124:22. One of Vela's parole conditions included that he abstain from the consumption of alcoholic beverages. TEH 45:7-23.

After the officers placed Vela on a parole hold, they subsequently conducted a search of his residence. TEH 41-42. Officer Bravo-Carney stated that she made the decision to search Vela's house on the basis of Vela's status as a parolee and the fact that

---

[3] Contreras admitted that he had purchased five beers, in violation of his parole agreement. TEH 66, 71. He explained that he bought only five beers because he not could afford a six-pack. TEH 73:18-20. He testified that there was no open beer in the cooler and that he had not been charged with any open container violation. TEH 66:15-16. The original police return noted only "five unopened Budweiser cans." TEH 53:20-25. But on cross-examination by the Deputy District Attorney, Officer Pace testified that there was also a sixth beer can open and beer floating throughout the cooler. TEH 54:5-6. Officer Bravo-Carney similarly testified that there were five unopened beers, one open can and beer floating in the cooler. TEH 99:23-25.

9

alcohol was discovered in Vela's car, TEH 82:10-24, even though she was not certain that the alcohol belonged to Vela. TEH 83-84. Officer Bravo-Carney explained that she decided to search Vela's residence because as the driver, he was "in control of the group . . . the leader of the group" and that her attention was focused on him. TEH 87:6-18. Officer Bravo-Carney was not sure how often she performed searches of parolees' homes, and her estimates varied from having done them only a few times in her career, to five times per year. See TEH 87-89.

During the search of Vela's residence, the officers discovered a gun and drug paraphernalia. TEH 124:23-26.

At the time that Vela filed his petition in this case, the Ninth Circuit had recently held that the Fourth Amendment required reasonable suspicion of a parole violation or criminal wrongdoing before searching a parolee. Moreno v. Baca, 400 F.3d 1152, 1163 (9th Cir. 2005). That decision directly contradicted the California Supreme Court's decision in People v. Reyes, in which the court held that particularized suspicion is not necessary to search parolees. 19 Cal.4th 743, 753-754 (Cal. 1998).[4]

However, even more recently, on December 9, 2005, the Ninth Circuit withdrew its prior decision in Moreno. 431 F.3d 633 (9th Cir. 2005). In its subsequent decision, the Moreno court did not appear to address the standard to be applied to a parole search. See Motley v. Parks, 432 F.3d 1072, 1088 (9th Cir. Dec. 30, 2005) (stating that "*Moreno* could be read as a declaration that it has long been the law of the circuit that law enforcement

---

[4]The U.S. Supreme Court denied certiorari in Reyes. Reyes v. California, 526 U.S. 1092 (1999) (cert. denied). The Court, however, recently granted certiorari in a California case presenting the issue:

> Does the Fourth Amendment prohibit police from conducting a warrantless search of a person who is subject to a parole search condition, where there is no suspicion of criminal wrongdoing and the sole reason for the search is that the person is on parole?

People v. Samson, 2004 WL 2307111 (Cal. Ct. App. 2004), petition for cert. filed, 2005 WL 2367028 (April 12, 2005) and cert. granted, Samson v. California,126 S.Ct. 34 (Sep 27, 2005) (No. 04-9728).

officers must have reasonable suspicion of wrongdoing to justify a parole search," but noting uncertainty as to whether that was the holding). Instead, the Moreno court appeared to hold that "officers must be aware that the individual is on parole before conducting a parole search." Motley, 432 F.3d at 1088 (implying that it was uncertain regarding "the extent" of Moreno court's decision); Moreno, 431 F.3d at 642 (noting that it was "uncontested" that officers in Moreno case "did not know of Moreno's parole status at the time they searched and seized him," and that, as a result, "those circumstances cannot justify" the search).

It is therefore unclear, following the Ninth Circuit's withdrawal of its original decision in Moreno, whether reasonable suspicion is required for parole searches in the Ninth Circuit. See generally Motley, 432 F.3d at 1084-88. Based on this court's review of the record, in the present case, the court would be inclined to conclude that the officers lacked reasonable suspicion that Vela was engaged in criminal activity.

However, whether the officers possessed particularized suspicion in this case is not determinative. Although the *standard* applicable to parole searches in the Ninth Circuit is currently unclear, what is clear is that any reasonable suspicion requirement *was not clearly established* at the time that Vela was searched in May 1999. See Motley, 432 F.3d at 1083-84. The search here occurred within months of the search at issue in Motley. See id. at 1076 (noting that alleged parole search occurred on March 18, 1999). In Motley, a section 1983 case, the Ninth Circuit concluded "caselaw provide[d] no clearer a picture of what was constitutionally required when the officers" conducted the March 1999 parole search. *Id.* at 1084. Accordingly, because "it was not clearly established that a particularized suspicion of wrongdoing on [the petitioner's] part was required as a prerequisite to the [parole] search of his residence," the court concluded that the officers in *Motley* were entitled to qualified immunity. *Id.* at 1088.

Nor can this court conclude that the searches at issue were in contravention of the U.S. Supreme Court's opinion in United States v. Knights, 534 U.S. 112 (2001). Vela

11

suggests that the parole searches violated the test for parole searches that the Court established in Knights, 534 U.S. at 118-119.  In Knights, the Court held that "*no more than reasonable suspicion*" of a probation violation was required to conduct a search of a probationer's residence.  Id. at 121.  However, the Court in Knights explicitly declined to address whether suspicionless searches of parolees with search conditions satisfied the Fourth Amendment.  Id. at 120 n.6; see also Motley, 432 F.3d at 1083-84 (recognizing that the Supreme Court had left open the question whether "a parolee's expectation of privacy [is] so diminished that a search without any particularized suspicion is reasonable").  In Motley, the Ninth Circuit further rejected Vela's very argument, noting that at the time of a search that occurred in 1999, such as the one here, Knights had not been decided, and there was no clearly-established law prohibiting suspicionless searches.  Id. at 1084.

Because, at the time of Vela's search, there was no clearly established law requiring the law enforcement officers to possess reasonable suspicion for the search, any motion to suppress would have failed.  Therefore, there can be no prejudice as a result of counsel's failure to file such a motion.

For these reasons, Vela's claim for ineffective assistance of counsel is DENIED.

## CONCLUSION

The court DENIES Vela's petition for writ of habeas corpus.  This order fully adjudicates the motion listed at No. 1 of the clerk's docket for this case and terminates all other pending motions.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: February 21, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge